[Cite as *PS Commercial Play, L.L.C. v. Harp Contrs., Inc.*, 2017-Ohio-4011.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| PS COMMERCIAL PLAY, LLC | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27253 |
| | : | |
| v. | : | T.C. NO. 16-CV-2584 |
| | : | |
| HARP CONTRACTORS, INC., et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the _____26th_____ day of _____May_____, 2017.

. . . . . . . . . . .

DANIEL A. BROWN, Atty. Reg. No. 0044132, 204 S. Ludlow Street, Suite 300, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

ANDREW J. NATALE, Atty. Reg. No. 0042110 and NORA E. LOFTUS, Atty. Reg. No. 0079985, 200 Public Square, Suite 3000, Cleveland, Ohio 44114
      Attorneys for Defendant-Appellant Harp Contractors, Inc.

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Harp Contractors, Inc. ("Harp"), filed September 6, 2016. Harp appeals from the trial court's August 9, 2016 decision overruling "Defendant's Motion to Stay Pending Arbitration." We hereby affirm

the judgment of the trial court.

{¶ 2} On May 23, 2016, PS Commercial Play, LLC, DBA Play & Park Structures ("Play & Park"), filed a Complaint against Harp and Ohio Farmers Insurance Co. ("Ohio Farmers"). The Complaint provides that "Harp was the prime contractor on a public works project undertaken by Harp with the Ohio Facilities Commission ('OSFC') and the Northmont City School District Board of Education ('Northmont') commonly known as Northmont City Schools – Kleptz Early Learning Center ('the Project') on the real property located at 1100 National Road, Clayton, OH 45315." According to the Complaint, "Play & Park was the subcontractor of Harp on the Project," and a copy of the March 10, 2014 Subcontractor Agreement is attached to the complaint. The Complaint alleges that in "its contract with the OSFC and Northmont, and pursuant to Ohio Revised Code Section 153.54, Harp was required to provide a Payment Bond for the Project," and a copy of the Payment Bond is also attached to the complaint. Play & Park asserted that Ohio Farmers was the surety on the Payment Bond.

{¶ 3} The Complaint alleges that Play & Park "has provided materials for the Project for which it has not been paid," and that it "is owed the entire amount of the Subcontract Agreement, the principal sum of $117,285.96." According to the complaint, Play & Park "has demanded payment from Harp and Harp has failed or otherwise refused to pay the sums due and owing." The complaint provides that Play & Park also "notified Ohio Farmers of the amount due in accordance with" R.C. 153.56(A), and that Ohio Farmers has refused to pay the amount due. In Count I of its Complaint, Play & Park asserts that "Harp's failure to pay Play & Park for labor performed and/or material supplied on the Project constitutes a breach of contract." In Count II, Play & Park asserts that

"Ohio Farmers owes Play & Park the principal sum of $117,285.96 under the Payment Bond." In Count III, Play & Park asserts that Harp has been unjustly enriched to Play & Park's detriment.

**{¶ 4}** The attached Subcontract Agreement identifies Harp as the Contractor and Play & Park as the Subcontractor. Article 4, paragraph 4.1 provides in part: "Payments generally will be made within 45 days of Contractors billing to Owner for Subcontractor's work * * *." Article 10, paragraph 10.7 thereof provides in part as follows:

> In Contractor's sole discretion, any and all claims or disputes between the Contractor and the Subcontractor arising out or relating to the Agreement or the Contract Documents, or the breach thereof, shall be decided by in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen. * * *

**{¶ 5}** On June 23, 2016, a "Stipulated Leave to Plead" was filed which provides: "We, the attorneys for the respective parties, do hereby stipulate that Defendants [Harp] and [Ohio Farmers] shall have an additional thirty (30) days, until July 25, 2016 to move, plead or otherwise answer Plaintiff's Complaint."

**{¶ 6}** On July 25, 2016, "Defendants' Joint Answer to Complaint and Harp Contractors, Inc.'s Statement regarding Counterclaims" ("Answer") was filed, along with "Defendants' Motion to Stay Pending Arbitration" ("Motion"). The Answer provides in part

that "Defendants state that Play & Park's work was untimely and defective, and Harp has not received payments from the owners for Play & Park's work." The Answer asserts the following defense: "Play & Park's claims are subject to mandatory and binding arbitration per the express written subcontract between the parties." The Answer further contains the following statement: "Harp has claims against Play & Park that are covered by the arbitration provision in the Subcontract, and Harp reasserts its right to pursue those claims through arbitration as set forth in Harp's Motion to Stay * * *. In the event that this Court denies the Motion to Stay, Harp requests fourteen (14) days leave following the entry of the Order denying the Motion to assert its counterclaims against Play & Park."

{¶ 7} The Motion provides that "Harp must be permitted to exercise its contractual right to have Play & Park'[s] claims decided through mandatory and binding arbitration, as required by the arbitration agreement Play & Park agreed to in writing." According to the Motion, "[i]n addition to the arbitration provision, the Subcontract also includes a 'pay if paid' provision that states that Harp is not required to pay Play & Park for any work unless and until Harp receives payment from the owner." The Motion further provides that the "Project owner has made claims against Harp relating to deficiencies in Play & Park's work and has withheld payment from Harp as a result of those alleged deficiencies, which form the basis of Harp's counterclaims against Play & Park." The Motion provides that Harp is not in default in proceeding with arbitration. The Motion provides as follows:

> For over a year, Harp has taken every effort to get the owner to release funds to Harp, including the mandatory and lengthy administrative claims process. In an effort to mitigate its damages, including those

against Play & Park, as alleged by the owner, Harp has continuously been investigating and working to try to resolve claims upstream with the owner so that it could then try to resolve claims downstream with the subcontractors. For these reasons, Harp had not previously filed arbitration. However, since it does not appear that Harp will be able to resolve its claims with Play & Park at this time, it will be filing an arbitration demand.

It is worthy to note that prior to filing its lawsuit, Play & Park did not request from Harp confirmation as to whether Harp would select arbitration to resolve the dispute, as customarily happens in the construction industry when arbitration is at one party's election. Typically, when a contract includes an arbitration provision that one party can elect at its sole discretion, or both parties must mutually agree upon, there is a pre-suit request from one party to the other to confirm whether the dispute will proceed to arbitration. That did not happen here.

Finally, the motion provides that Play & Park's bond claim must also be stayed pending arbitration.

{¶ 8} On July 26, 2016, the trial court issued a default notice which provides that Harp and Ohio Farmers are in default for answer or appearance.

{¶ 9} On August 4, 2016, "Plaintiff's Response to Defendant's Motion to Stay Pending Arbitration" was filed. Play & Park asserted that Harp's motion should be denied because Harp "waited far too long to initiate an arbitration proceeding, and that delay must be considered a waiver of Defendant's right to pursue a resolution of Plaintiff's

claims through arbitration."   Play & Park asserted that it "provided labor and materials for the Project during the time period of July 2014 through November 2014 for which it has not been paid.   It is Play & Park's understanding that the Project was considered substantially complete in March 2015."   Play & Park asserted that it then "made several demands for payment to Harp that were ignored.   After waiting several months for a potential resolution of the matter with Harp, Play & Park provided a written notice dated October 16, 2015 to Ohio Farmers of its claim in the amount of $117, 285.96 against the Bond," which Ohio Farmers denied in correspondence dated October 21, 2015.   Play & Park asserted that the arbitration clause at issue "cannot be considered a mandatory arbitration clause because its invocation is based on the contractor's discretion and that the parties have not otherwise agreed.   Only Harp has discretion to have the dispute referred to arbitration. Until Harp initiates the process, Play & Park, as the subcontractor, has no notice that it should not file suit."   Play & Park asserted that "Harp's stated 'intention' to file for arbitration is not enough to justify its Motion to Stay." Play & Park further argued that "[b]ecause the failure to provide a demand for arbitration within a reasonable time after the dispute arose is contrary to the requirements of the [arbitration] clause, such delay is properly construed as a default in its exercise of discretion to demand binding arbitration of the dispute with Play & Park * * *."

{¶ 10} In overruling Harp's motion, the trial court determined as follows:

Upon review, the Court finds Plaintiff's arguments to be persuasive. Specifically, the Court notes that, pursuant to R.C. 2711.02(B), a stay pending arbitration is appropriate when "the applicant for the stay is not in default in proceeding with arbitration."   However, here, Defendant did not

demonstrate any intention to proceed with arbitration until more than a year after the project at issue had been substantially completed, and it was aware that Plaintiff was not satisfied with Defendant's performance under the contract. Accordingly, the Court finds that Defendant did not pursue arbitration within a "reasonable time," as required by the parties' contractual agreement.

{¶ 11} The docket reflects that on August 22, 2016, the trial court referred the matter to mediation, and on October 27, 2016, a "Termination of Mediation – Transfer of Case from Mediation; Mediation Conference Date Vacated" was filed. The Termination provides: "As there are many appeals pending, parties want to wait until they hear the outcome of said appeals before coming to mediation."

{¶ 12} Harp asserts the following assignment of error:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT HARP CONTRACTORS, INC.'S ("HARP") MOTION TO STAY PENDING ARBITRATION BECAUSE THE CONTRACT BETWEEN HARP AND APPELLEE PS COMMERCIAL PLAY LLC dba PLAY & PARK STRUCTURES ("PLAY & PARK") CONTAINS A MANDATORY AND BINDING ARBITRATION PROVISION, AND HARP NEITHER WAIVED ITS RIGHT TO ARBITRATE NOR WAS IN DEFAULT IN PROCEEDING WITH ARBITRATION.

{¶ 13} Harp asserts that it "asserted its right to arbitrate by filing its Motion to Stay simultaneously with its Answer," and that it "has not participated in litigation." Harp asserts that it is not required to "initiate a dispute with Play & Park by filing a demand for

arbitration."  According to Harp, if "Park & Play had decided to file suit earlier than May 2016, Harp would have asserted its right to arbitration earlier as well." Harp argues that the "Subcontract does not require Harp to file a demand for arbitration in order to enforce its right to arbitrate the dispute."

{¶ 14} Play & Park responds that "the trial court properly concludes that Harp did not promptly assert its right to arbitration when Play & Park demanded payment of the Subcontract amount after the Project was substantially completed in March 2015."

{¶ 15} As this Court has previously noted, " 'Ohio has a strong public policy favoring arbitration.' * * *.  Arbitration is favored because it allows parties to bypass expensive and time-consuming litigation and 'provides the parties thereto with a relatively expeditious and economical means of resolving a dispute.' * * *." *Westerfield v. Three Rivers Nursing & Rehab. Ctr.*, 2d Dist. Montgomery No. 25347, 2013-Ohio-512, ¶ 16. "Indeed, the Ohio courts recognize a 'presumption favoring arbitration' that arises 'when the claim in dispute falls within the scope of the arbitration provision.' * * *." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27.

{¶ 16} "The Ohio Arbitration Act sets forth a trial court's role in construing and enforcing arbitration agreements." *Lindsey v. Sinclair Broadcast Group, Inc.*, 2d Dist. Montgomery No. 19903, 2003-Ohio-6898, ¶ 15.  R.C. 2711.02(B) provides:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration

of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

{¶ 17} "Default" is "the omission or failure to perform a legal or contractual duty." *Black's Law Dictionary* 376 (5th Ed. 1979).

{¶ 18} "In determining whether a trial court has properly ruled upon a motion to stay the proceedings and compel arbitration, the standard of review is whether the order constitutes an abuse of discretion. *Zachary v. Crocket Homes, Inc.*, 2003-Ohio-5237, ¶ 15." *Lindsey*, ¶ 19. As this Court has previously noted:

> "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990); *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 7.

*Routson-Gim-Belluardo, v. Jefferson Twp. Local School Dist. Bd. of Educ.*, 2016-Ohio-1265, 61 N.E.3d 914, ¶ 27 (2d Dist.)

{¶ 19} Paragraph 10.7 of the Subcontract Agreement does not contain a mandatory and binding arbitration provision but rather granted Harp the discretion to arbitrate any and all claims or disputes between it and Play and Park relating to the Subcontract Agreement. If Harp chose to do so, Paragraph 10.7 set forth a contractual duty that "Notice of the demand for arbitration *shall be filed in writing with the other party*

*to this Agreement and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen."* Harp does not dispute Play & Park's assertion that the work herein was substantially completed by March of 2015. In its reply brief, Harp asserts that if "the trial court's decision is upheld, it would essentially allow all claimants to wait 'more than a year after the project at issue had been substantially completed' before filing litigation in order to avoid an arbitration provision to which that claimant agreed to be bound by the clear and unambiguous terms of a written contract." It was up to Harp to pursue arbitration by filing a demand for arbitration within a reasonable time after the dispute arose, namely after Play & Park submitted requests for payment for materials and labor that remained unpaid. Harp does not assert that it filed a notice of demand for arbitration, and there is no evidence that Harp initiated the arbitration process as required by Paragraph 10.7.

{¶ 20} We conclude that Harp is in default in proceeding with arbitration for its failure to file a demand for arbitration within a reasonable time after its dispute with Play & Park arose. In other words, an abuse of discretion is not demonstrated, and Harp's sole assignment of error is overruled. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and WELBAUM, J., concur.

Copies mailed to:

Daniel A. Brown
Andrew J. Natale
Nora E. Loftus
Hon. Dennis J. Adkins